Peter N. Wang (pwang@foley.com)
Robert S. Weisbein (rweisbein@foley.com)
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
(212) 338-3528

*Attorneys for Defendant Saturdays Surf LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- :

KATE SPADE LLC,

        Plaintiff,

vs.

SATURDAYS SURF LLC,

        Defendant.

-------------------------------------------------------------- :

Case No. 12 CIV 9260

## SATURDAYS SURF LLC'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS AGAINST KATE SPADE LLC

Defendant, Saturdays Surf LLC ("Saturdays"), by its attorneys, Foley & Lardner LLP,

answers the Complaint for Declaratory Judgment as follows:

## PRELIMINARY STATEMENT

1.     Saturdays denies that the launch of the Kate Spade SATURDAY brand "is

threatened by the spurious allegations of trademark infringement made by SSLLC through

correspondence, blog posts, social media comments, and the recent defacing of Kate Spade's

own Instagram page and Twitter feed."  Saturdays is without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in the Complaint, except

admits, upon information and belief, that Kate Spade intends to launch a new global brand under

the trademark KATE SPADE SATURDAY and that it seeks a declaration from the Court that

the KATE SPADE SATURDAY mark does not infringe Saturdays' trademark rights in its mark SATURDAYS SURF NYC.

2.      Saturdays is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint, and therefore denies such allegations.

3.      Saturdays is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of the Complaint, and therefore denies such allegations.

4.      Saturdays admits that on July 20, 2010, Kate Spade filed an application to register the mark KATE SPADE SATURDAY for various items of jewelry, which application was published for opposition on October 26, 2010, and thereafter allowed for registration on December 21, 2010, which application Saturdays did not oppose.  Saturdays is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth, and therefore denies such allegations.

5.      Saturdays denies that the SATURDAYS SURF NYC logo shown in Paragraph 5 of the Complaint is a "nautical-inspired logo."  Saturdays is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 5 of the Complaint, and therefore denies such allegations.

6.      Saturdays is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 of the Complaint, and therefore denies such allegations.

7.      Saturdays admits that among the many products that it sells at its retail locations and website are surfboards, wetsuits, and men's clothing and apparel.  Saturdays also admits that on April 15, 2011, Saturdays filed two applications with the United States Patent and Trademark Office ("USPTO") to register the trademark SATURDAYS SURF NYC, one in block form and the other in stylized logo form as shown in Paragraph 5 of the Complaint for clothing,

sunglasses, handbags, purses and wallets as well as retail and online retail store services, featuring clothing, clothing accessories, personal grooming products, coffee, and artwork, which applications matured to registration on December 25, 2012 and December 18, 2012, respectively. Saturdays is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and therefore denies such allegations.

8.     Saturdays denies the allegations in Paragraph 8 of the Complaint, except admits that its counsel sent Kate Spade a letter dated November 14, 2012, which speaks for itself.

9.     Saturdays denies the allegations in Paragraph 9 of the Complaint except, admits that on July 20, 2012, Kate Spade filed three trademark applications with the USPTO to register the mark KATE SPADE SATURDAY for a variety of goods and services.  Saturdays also admits that it has two retail stores in downtown New York City and another in Tokyo, Japan, all of which offer a curated selection of hand-shaped surfboards, fine art, and lifestyle accessories, as well as a full ready-to-wear collection of men's clothing.

10.    Saturdays denies the allegations in Paragraph 10 of the Complaint, except admits that Kate Spade's counsel sent Saturdays' counsel a letter dated December 10, 2012, which speaks for itself, and that Kate Spade filed the Complaint herein on December 19, 2012.

## THE PARTIES

11.    Saturdays is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint, and therefore denies such allegations.

12.    Saturdays admits that it is a corporation organized and existing under the laws of the State of New York, that it has retail locations at 31 Crosby Street, New York, New York 10013 and 17 Perry Street, New York, New York 10014, that it sells surfboards, surfing gear, fine art, coffee, lifestyle accessories and a full ready-to-wear collection of men's clothing

through its website, at its two stores in New York City as shown in the photographs, and its store in Tokyo, Japan as well as through over 150 retailers located throughout the United States and elsewhere throughout the world.

13.     Paragraph 13 contains conclusions of law to which no response is required.

14.     Paragraph 14 contains conclusions of law to which no response is required.

## KATE SPADE SATURDAY

15.     Saturdays is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint, concerning when Kate Spade conceived of the KATE SPADE SATURDAY name and mark or why it combined the name "Kate Spade" and the term "Saturday" to create the name and mark KATE SPADE SATURDAY, and therefore denies such allegations.  Saturdays admits the remaining allegations.

16.     Saturdays is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint, and therefore denies such allegations.

17.     Saturdays denies that its use of the mark SATURDAYS SURF NYC in 2010 was minimal, and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and therefore denies such allegations.

18.     Saturdays admits the allegations in Paragraph 18 in the Complaint.

19.     Saturdays admits that Kate Spade's application to register the mark KATE SPADE SATURDAY for jewelry, Application Serial Number 85/088913, was published for opposition in the *Official Gazette* on October 26, 2010, and that said application was allowed by the USPTO on December 21, 2010.  Saturdays is without knowledge or information concerning whether or not the mark was objected to by any third party, and therefore denies such allegations.

4

The allegations in Paragraph 19 concerning the legal effect that the publication of the application in the *Official Gazette* is a conclusion of law to which no response is required.

20.    Saturdays admits that Kate Spade's trademark applications have all been approved and published in the *Official Gazette*, and that Saturdays did not oppose any of those KATE SPADE SATURDAY applications.  Saturdays denies that there is any legal significance to the fact that it did not oppose said applications or that some of those applications were published after the April 15, 2011 filing of Saturdays' application to register the mark SATURDAYS SURF NYC.

21.    Saturdays admits that the USPTO approved both the KATE SPADE SATURDAY and the SATURDAYS SURF NYC trademarks for registration, but lacks any knowledge or information sufficient to form a belief as to the truth of the allegations concerning the existence of third party trademark applications and registrations for apparel products in which the term "Saturday" is a component and whether or not those marks played any part in the USPTO's decision to permit the registration of the parties' marks, and therefore denies such allegations.

22.    Saturdays denies the allegations set forth in Paragraph 22 of the Complaint.

23.    Saturdays denies the allegations set forth in Paragraph 23 of the Complaint, except admits that it has accused Kate Spade of deliberately and willfully infringing the SATURDAYS SURF NYC mark to the detriment of Saturdays' reputation.

24.    Saturdays denies the allegations set forth in Paragraph 24 of the Complaint, except admits that its counsel sent a letter to Kate Spade dated November 14, 2012, which speaks for itself.

25.    Saturdays is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether or not the threat of litigation "left a cloud hanging

over Kate Spade and the KATE SPADE SATURDAY brand" before its launch, and whether or not that purported threat of litigation caused Kate Spade's in-house counsel to call Saturdays' counsel, and therefore denies such allegations.   Saturdays admits that Kate Spade's outside counsel sent a letter dated December 10, 2012, in response to Saturdays' counsel's letter dated November 14, 2012, which speaks for itself.   Saturdays admits that its counsel sent Kate Spade's counsel an email dated December 11, 2012, which speaks for itself.

26.     Saturdays denies the allegations set forth in Paragraph 26 of the Complaint.

27.     Saturdays denies the allegations set forth in Paragraph 27 of the Complaint.

28.     Saturdays denies that it has encouraged anyone to post disparaging comments on the KATE SPADE SATURDAY Twitter feed.   Saturdays is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations as to whether or not Kate Spade has deleted or will delete Twitter posts, and therefore denies such allegations.

29.     Saturdays denies that it has coordinated a campaign of litigation threats, planted blog posts, and social media defacings.   Saturdays is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the Complaint, and therefore denies such allegations.

## COUNT ONE

### (Declaration of Non-Infringement)

30.     Saturdays incorporates by reference its responses to Paragraphs 1 through 29 of the Complaint.

31.     Saturdays admits the allegations set forth in Paragraph 31 of the Complaint.

32.     Paragraph 32 contains conclusions of law to which no response is required.

## DEMAND FOR RELIEF

33.     WHEREFORE, Saturdays prays that this Court enter judgment in its favor and against Kate Spade with regard to the above claim and that the Complaint be dismissed with prejudice and that Saturdays be awarded the costs, disbursements, and attorneys' fees incurred in this mattered as provided by law.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Kate Spade has failed to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Kate Spade's claim is barred in whole or in part by the doctrine of unclean hands.

### THIRD AFFIRMATIVE DEFENSE

Saturdays hereby gives notice that it intends to rely on such other and further defenses as may become available or apparent during discovery proceedings in this case and hereby reserves the right to amend its Answer and to assert any such defenses.

## COUNTERCLAIMS

By and for its Counterclaims against Kate Spade, Saturdays alleges as follows:

### PRELIMINARY STATEMENT

1.     In June of 2009, three friends, Josh Rosen, Colin Tunstall and Morgan Collett, who shared a passion for surfing, fashion and New York City decided to open a store in downtown Manhattan that would meld a surf sensibility together with designer fashion and a metropolitan New York City vibe.  It was not to be a typical surf shop featuring surfboards,

surfing gear, board shorts, t-shirts and flip flops, but rather an innovative amalgamation of a fashion boutique, coffee bar, art gallery, and cool place to hang out that also happened to sell surfboards and other surf gear.  The name SATURDAYS was the first and only name considered because it perfectly captured the essence of what Rosen, Tunstall and Collett were seeking to communicate – namely, the positive feelings associated with the weekend, a day that friends surf and otherwise relax and drink coffee, talk and shop.  It was also selected because SATURDAYS would be easy to remember.  "SURF NYC" was added to the name as a way to tie the surf vibe and New York City together.  However, from the outset, Rosen, Tunstall and Collett simply referred to the brand as SATURDAYS, as did the press and public.

2.     The SATURDAYS SURF NYC store located at 31 Crosby Street in New York City opened in August 2009 and was an immediate success, garnering substantial favorable publicity from both the general and trade press.  Events held at the store were attended by fashionistas, celebrities, apparel buyers from fashionable retailers, and generally interesting people from different walks of life.

3.     When the SATURDAYS store opened in August 2009, the only clothes being sold were those of other brands.  Given the short time period from when Messrs. Rosen, Tunstall and Collett conceived the idea for the store to when it opened (a period of about two months) and the limited financial resources that they had, it was simply not possible for them to design, manufacture, and sell a full line of clothing under the SATURDAYS brand.  However, by December 2009, Saturdays had designed and manufactured a full line of t-shirts which bore the trademarks SATURDAYS SURF NYC, SATURDAYS SURF and SATURDAYS (hereinafter collectively referred to as the "SATURDAYS Marks").  These shirts were being sold in the Crosby Street store by January 2010, as well as in Bloomingdale's by June 2010.  Sales of

Saturdays' first full line of men's ready-to-wear clothing bearing the SATURDAYS Marks began in July 2010. The clothing was available at the Saturdays' Crosby Street store, on the company website, at numerous Bloomingdale's stores, J.Crew, The Webster, Ron Herman, and Inventory NYC. Since that time, Saturdays has designed ten seasons of SATURDAYS men's clothing which have been sold in Saturdays' two stores in downtown Manhattan, on its website, and in 150 retail customers worldwide, such as Barney's New York, Bloomingdale's, J. Crew, Steven Alan, Ron Herman and Fred Segal Man.

4.      Significantly, Saturdays has a retail store in Tokyo, Japan in the Daikanyama District, which is in close proximity to the location of Kate Spade's first KATE SPADE SATURDAY store, which allegedly is scheduled to open in four weeks. Saturdays clothing is also sold through a number of well-known retailers in Japan such that the SATURDAYS brand of clothing has become very popular. The clothes are also sold in many other countries, including Germany, the United Kingdom, Australia, Italy, Canada, China, France, Indonesia, Ireland, Korea, the Netherlands, Scandinavia, Singapore, Taiwan and South Africa.

5.      Given the fame and notoriety of the SATURDAYS retail stores and SATURDAYS men's clothing line, and the favorable and substantial publicity that has surrounded the brand since September 2009 and continuing today, it is inconceivable that Kate Spade did not learn of Saturdays early on during the development of the KATE SPADE SATURDAY brand such that warning bells should have gone off and questions raised as to whether or not the mark KATE SPADE SATURDAY would infringe the SATURDAYS Marks. In fact, upon information and belief, Kate Spade was aware of Saturdays at least as early as 2011, and, at the latest, early 2012, but it viewed Saturdays as being too small to challenge Kate

Spade's improper conduct.  Consequently, Kate Spade's adoption and use of the KATE SPADE SATURDAY mark constitutes willful trademark infringement and unfair competition.

6.      Although the KATE SPADE SATURDAY brand is not expected to launch until March 2013, the publicity surrounding the launch has detailed the nature and manner of use such that it has become clear that the type font used for the mark is nearly identical to the font in which the SATURDAYS Marks appear.   Furthermore, it is significant that the word SATURDAY is the dominant element of the mark with the Kate Spade house mark appearing in much smaller type font.  In fact, the website address is www.saturday.com, and the website's home page announces "MAKE PLANS FOR SATURDAY.  A NEW BRAND FROM KATE SPADE NEW YORK IS LAUNCHING THIS SPRING."  Even the press refers to the new Kate Spade brand as SATURDAY.  See Exhibit 1 annexed hereto.  With these two brands moving toward a head-on collision in the marketplace, confusion between SATURDAY and SATURDAYS is inevitable.   Only preliminary and thereafter permanent injunctive relief enjoining Kate Spade from manufacturing, distributing, advertising, offering for sale, and selling clothing and accessories bearing the trademarks KATE SPADE SATURDAY and SATURDAY, and from operating retail clothing stores and a website under the same marks will protect the reputation and goodwill Saturdays has established in the SATURDAYS Marks.

## NATURE OF THE ACTION

7.      This is an action for trademark infringement, unfair competition, and other related claims.  Kate Spade, without proper authorization, willfully has adopted and publicized its plans to use its KATE SPADE SATURDAY mark on and in connection with apparel, handbags, purses, accessories, and other products as well as in connection with online and retail clothing

store services, and the mark's dominant feature – the word SATURDAY –  is almost identical to Saturdays' federally registered word and design marks for the same and other similar products.

## THE PARTIES

8.      Saturdays is a corporation organized and existing under the laws of the State of New York and has domestic retail locations at 31 Crosby Street, New York, New York 10013 and 17 Perry Street, New York, New York 10014.

9.      Kate Spade is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 2 Park Avenue, New York, New York 10016.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1332(a)(1) and (2).  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), as questions of federal law have been presented under 15 U.S.C. §§ 1114 and 1125(a).  This Court has supplemental jurisdiction over Saturdays' state law claims pursuant to 28 U.S.C. § 1367.

11.      Venue is proper based on 28 U.S.C. § 1391 because Kate Spade resides and regularly conducts business in this district, and/or a substantial part of the claims arose in this district.

## FACTS COMMON TO ALL COUNTS

### Saturdays: The Business and The Brand

12.      With backgrounds in fashion sales, design, and publishing, this group of friends – Collett, Rosen, and Tunstall – came up with the idea for a nontraditional shop, a store that catered to sophisticated, fashion-forward New Yorkers.  They wanted to represent surf culture in

a way that it had never been before, in a way that reflected the style, fashion, and metropolitan vibe of New York City.  Their store would be geared toward laid-back, athletic, and fashion-conscious men like themselves.  While a majority of brands in the surfing industry had opened stores and brought surf wear to New York City, Collett, Rosen, and Tunstall sought to bring *New York City* to surf wear.

13.    Tunstall, who has an extensive background in art and graphic design, and who serves as Saturdays' art director, conceived of the name SATURDAYS, which Rosen and Collett thought was the perfect name.  SATURDAYS connoted everything the trio wanted to suggest to its future customers and the fashion world at large – freedom, comfort, positivity, relaxation, and care-free fun.

14.    Collett, Rosen, and Tunstall decided to add "SURF NYC" to the SATURDAYS mark because the combination of those two words would be surprising and provocative given that they rarely are associated with one another.  From the start, Collett, Rosen, and Tunstall have all referred to the brand simply as SATURDAYS, a nickname that has stuck with both the general public and the press. Articles referring to the company and brand simply as SATURDAYS are attached hereto as Exhibit 2.

15.    Tunstall designed Saturdays' logo and, because the concept of SATURDAYS is so central to the brand, the word SATURDAYS is always featured prominently and much larger than the words "SURF" and "NYC" below it.  The font is streamlined and minimalist, and the words all appear capitalized.  A broken diagonal line runs across the text, providing a sort of abstract frame around the graphic, unpretentious, and simple-yet-distinctive SATURDAYS SURF NYC mark. Tunstall also designed different variations of this logo – some without the diagonal line and some bearing only the words SATURDAYS or SATURDAYS SURF.  While

the logo appears in different variations, the word SATURDAYS has incontrovertibly become a signature of the brand.

16.     In August 2009, Saturdays opened its first store in Manhattan's SoHo district.  In designing the store, Collett, Rosen, and Tunstall were inspired by both their surfer-meets-New York City concept and the unique SoHo setting.  The shop reflects their love of New York – the city, the art, the architecture, the food, and the people.  The store also has a coffee bar and a back deck where customers can relax and take a break from the fast-paced streets of New York City.  At first, before the entrepreneurial trio brought in enough capital to create their own collection, Saturdays carried only third party brands.  Beyond clothing, they also sold wet suits, surf boards, and other surfing gear as well as candles, skincare products and artwork.

17.     On August 29, 2009, Saturdays celebrated its hard opening by throwing a party sponsored by Asahi beer in the store.  Attendees included many important players in the fashion industry.  Saturdays continued to promote itself by throwing events in the store once a month.  Promotional materials for these events regularly referred to the company and the store simply as SATURDAYS.  Tunstall also created a Saturdays blog in September 2009, which contributed to the company's quick rise to fame, and had over 70,000 visitors a month.

18.     In early November 2009, only a few months after opening, Collett, Rosen, and Tunstall realized their vision of designing a unique Saturdays collection.  Beams, a Japanese retailer, who had learned of the SATURDAYS store asked them to design t-shirts bearing the SATURDAYS Marks.  This marked the beginning of Saturdays' original clothing brand – a collection of t-shirts with logos bearing the SATURDAYS Marks with a clear focus on the word SATURDAYS.  The t-shirts were a huge hit in Japan and were available in the SoHo store by January 2010.

13

19.     Saturdays soon designed a full ready-to-wear men's collection, and the demand for it took off at full speed.  Bloomingdale's reached out to the company asking to buy the original collection in its SoHo store.  On June 24, 2010, Saturdays released a line of clothing in Bloomingdale's, and several other upscale, contemporary clothing stores soon followed suit. Saturdays launched lines in Inventory in March 2010, in J. Crew in July 2010, in Ron Herman in September 2010, and in Barney's Co-Op in February 2012.   J. Crew sold small sizes of the Saturdays collection in their women's department. Annexed hereto as Exhibit 3 is a screenshot of J. Crew's Women's Shop featuring one of Saturdays' t-shirts. The clothing (and accompanying labels) initially sold in these retail stores bore variations of the SATURDAYS Marks, always with an emphasis on the word SATURDAYS.  Saturdays chose not to release its clothing in traditional surf shops, as its marketing strategy from the start had been to target a more classic, contemporary, and fashion-forward customer base.

20.     Saturdays' ready-to-wear men's collection consists of simple and classic designs in mostly neutral tones with pops of bright color.  The designs are eye-catching, simple and original.  Though inspired by the art of surfing, Saturdays is in fact an apparel brand.  The collection is sophisticated and stylish, to be worn not at the beach itself but once back from the beach and on the streets of New York City.  Nearly every garment and accessory bears a variation of the SATURDAYS Marks, as the unique name and logo have become a central part of the brand's aesthetic. The collection often features artistic variations on the word SATURDAYS – breaking it up into syllables, highlighting it in bright colors, or both.  In the past three years, the company has emphasized more and more the SATURDAYS mark alone without either "SURF" or "NYC."  The SATURDAYS mark alone appears either on labels or in graphics on roughly 80 of Saturdays' styles, in 3 or 4 colors each – totaling 289 SKUs.  Photographs

14

showing the use of the SATURDAYS Marks on various Saturdays items of apparel and labels are annexed hereto as Exhibit 4.

21.     Since opening in August 2009, Saturdays' flagship store has become a SoHo icon of sorts.  Saturdays has been featured in many well-respected and highly distributed fashion and culture publications.  Among the most notable of these include *The New York Times*, *New York Magazine*, *The Wall Street Journal*, *Esquire*, *Vogue Online*, *Daily Candy*, and *Monocle* (a cover story).  Collett, Rosen, and Tunstall were also featured in *GQ*'s "Best New Menswear Designers of 2012" and *Instyle*, a popular women's fashion magazine, in December 2012.

22.     The growth of Saturdays' popularity can also be attributed to its website. Saturdays' website, found at the domain name www.saturdaysnyc.com, was first launched in September 2009 and exhibits the same aesthetic appeal as the brand itself: it is simplistic, minimalist, artistic, and fashion-forward.  Since its launch the website has served as a venue through which Saturdays has been able to advertise its events, interviews with the press, collaborations with other brands, and in-store promotions.  In January 2011, Saturdays launched its e-commerce website, where it sells both its original collection and other merchandise that can be found in its stores.  The SATURDAYS Marks are featured prominently throughout the site, always with an emphasis on the word SATURDAYS.  Saturdays has carried its minimalist and contemporary aesthetic into its most recent publication, *Saturdays Magazine*. Launched in July 2012, the magazine features articles, interviews, and photographs of surfing icons, artists, and New York City.

23.     On April 15, 2011, Saturdays filed applications to register both the SATURDAYS SURF NYC design trademark and the SATURDAYS SURF NYC standard character trademark for sunglasses, handbags, purses, wallets, clothing, gloves, scarves, socks, shoes, and retail and

online store services, Application Serial Numbers 85/296,923 and 85/296,941.  The 85/296,941 application was published for opposition on October 2, 2012 and the 85/296,923 application on October 9, 2012, and registered with the United States Patent and Trademark Office on December 18, 2012 and December 25, 2012, respectively.  True and correct copies of Saturdays' trademark registrations are attached hereto as Exhibit 5.

24.    Since its first store opening in August 2009 Saturdays' momentum has only increased.  The company has expanded not only its product line, but also its geographic span. Saturdays opened its first international store in Tokyo, Japan in April 2012.  A few months later, in June 2012, Saturdays opened its third store in Manhattan's West Village.  Saturdays currently has plans to open a second location in Kobe, Japan in April of this year.

25.    Today, Saturdays' collection is sold in ten Bloomingdale's and eighteen Barney's locations nationwide.  Its list of retail partners has grown to include Fred Segal Man, Steven Alan, Bastille, Mr. Porter, and American Rag, among others.

26.    Over the past few years, Collett, Rosen, and Tunstall have devoted a significant amount of time and energy building Saturdays' brand integrity and awareness.  As a result, Saturdays has become a recognized force in the fashion industry.  Once a small storefront in Manhattan's SoHo neighborhood, Saturdays has grown into a thriving enterprise that includes a full men's ready-to-wear and accessories line, with three freestanding locations, a significant online presence, and pieces from its collection selling in boutiques around the world.

27.    While the collection has been designed specifically for men, women are regular consumers of the brand.  In fact, women comprise roughly 15% of Saturdays' customer list. Further, Saturdays has sold t-shirts to women's departments of numerous retailers, including Adam et Rope (Japan), Ron Herman USA, Beams Japan, and Shinzone Japan.  Most recently

16

*Lucky*, a well-known fashion magazine and website geared only toward women, featured one of Saturdays' t-shirts in an article entitled "So What If It's Technically a Men's Tee?," advising that its female readers wear it for "the ultimate laid-back yet totally chic weekend look." In an even more recent online article, *Women's Wear Daily* celebrated the launch of Saturdays' new collaboration with Parisian concept store Collette – a five-piece unisex line, of which the t-shirt featured in *Lucky* is a part and which also includes board shorts, a tote bag, beach towel, and hat. Copies of the *Lucky* and *Women's Wear Daily* articles featuring Saturdays' clothing targeted toward women are attached hereto as Exhibit 6. Saturdays has long had its eye on the womenswear sector and intends to design clothing specifically for women in the future.

### Kate Spade's Infringing Conduct

28. With the impending launch of its new line, KATE SPADE SATURDAY, Kate Spade threatens to put an end to Saturdays' hard-earned success.

29. Ostensibly without any knowledge of Saturdays, despite the popular blog and myriad of articles in well-known print and online fashion publications highlighting Saturdays as a store and a quickly growing brand, Kate Spade decided to create a new, lower-priced, more casual sister brand to its widely popular brand KATE SPADE NEW YORK: KATE SPADE SATURDAY. Upon information and belief, Kate Spade will be opening its first KATE SPADE SATURDAY store in Tokyo in just four weeks, followed by a launch of its e-commerce site located at www.saturday.com in the United States.

30. Not only are the two brands' names – SATURDAYS and SATURDAY – nearly identical, but the similarities in the branding and marketing are also impossible to ignore. As SATURDAYS SURF NYC is known simply as SATURDAYS, KATE SPADE SATURDAY is already being referred to as just SATURDAY in many articles publicizing its upcoming launch. *See* Exhibit 1. Even Kyle Andrew, Kate Spade New York's Senior Vice President and Brand

17

Director, has shortened the new brand's name to SATURDAY in interviews. An interview with Mr. Andrew is attached hereto as Exhibit 7.  Additionally, Kate Spade's website for the new brand is simply www.saturday.com.

31.     The logos for the two trademarks SATURDAYS and SATURDAY are also exceedingly similar.  Both emphasize SATURDAY(S) in large capital letters in very similar fonts.  In both logos, the SATURDAY(S) element is significantly larger than the other words.  In fact, the KATE SPADE house mark appears above the SATURDAY mark in letters that are less than ⅛ the size of SATURDAY mark, making SATURDAY by far the dominant element of the mark.  Kate Spade places SATURDAY on a bright yellow background, a color that Saturdays has used regularly since at least April 2010.  Photographs of Saturdays' use of what Kate Spade claims to be its new line's signature yellow color are attached hereto as Exhibit 8.  The two brands' placement of logos is even similar – both use flag labels and  round labels with nearly identical trademarks.  Comparisons of these labels are attached hereto as Exhibit 9.

32.     Due to the similar names, logos, and overall branding, even though Kate Spade has not yet launched its new line, customers are already confused.  On January 28, 2013 the fashion and culture blog http://decor8blog.com reported on the upcoming launch of Kate Spade's new brand.  In the comments section of this blog entry, one reader asked: "Wait is this a collaboration with Saturday Surf?  The branding looks exactly the same."

33.     Upon information and belief, Kate Spade's SATURDAY clothing and accessories will be sold online at www.saturday.com and eventually in KATE SPADE SATURDAY retail stores.

34.     Upon information and belief, Kate Spade's new line and the Saturdays collection have the same sensibility.  They fall into the same price range, and in both, the clothing is

minimalist in design, contemporary, casual, and sophisticated.  By adding a matching price tag and the word SATURDAY in Saturdays' same font to its new collection, Kate Spade threatens to bring Saturdays' exciting growth to a screeching halt.  Kate Spade, a global force in the fashion industry, stands in a position effectively to dwarf Saturdays with the release of its products and the inevitable barrage of advertising surrounding the clothing line all bearing a nearly identical logo and the word SATURDAY that has come to distinguish Saturdays' brand.

35.    Kate Spade filed its first intent-to-use applications for the KATE SPADE SATURDAY mark for a variety of clothing, jewelry, apparel, backpacks and luggage on July 20, 2010 – almost one year after the opening of Saturdays' SoHo store, after a year of Saturdays features in fashion and mainstream magazines, including those mentioned above with widespread audiences, and after the Saturdays clothing line had already been launched in Bloomingdale's, one of Kate Spade's largest retail partners.  Kate Spade also filed intent-to-use applications to register KATE SPADE SATURDAY for dishes, kitchen household products, cosmetics, skincare, and bath products on February 14, 2012; for bedding and bedroom products on August 16, 2011; and for electronics, office accessories, and eyewear, including sunglasses, on August 11, 2011.

36.    Upon reading an October 23, 2012 article in *Women's Wear Daily* online announcing the upcoming launch of Kate Spade's new brand, SATURDAY, Collett, Rosen, and Tunstall became concerned that Kate Spade was launching an infringing clothing line that would cause significant confusion in the marketplace with their SATURDAYS brand.  After investigating further online, they grew even more concerned by the almost-identical logo, branding, and labeling of Kate Spade's soon-to-be-released brand.

37.     Through its outside counsel, Saturdays sent a cease and desist letter to Kate Spade on November 14, 2012, giving Kate Spade actual notice of the SATURDAYS Marks, explaining the basis for Saturdays' rights to the Marks, and requesting that Kate Spade refrain from any actions that would constitute trademark infringement or otherwise threaten the Saturdays brand. Kate Spade responded on December 10, 2012, claiming that it was unaware of Saturdays' existence when it conceived of KATE SPADE SATURDAY in 2009 and that, unlike Saturdays' customers who were nothing more than "surfer dudes" and "beach bums," Kate Spade's clientele was refined and sophisticated enough to easily distinguish the two brands.

38.     On December 19, 2012, Kate Spade sued Saturdays seeking a declaration of non-infringement.  Despite the actual notice given to it in Saturdays' November 14, 2012 cease and desist letter, Kate Spade has continued to promote its new line KATE SPADE SATURDAY and its upcoming launch.

39.     Kate Spade's use of the KATE SPADE SATURDAY mark on and in connection with its clothing and accessories is likely to cause immediate and irreparable harm to the SATURDAYS Marks and the goodwill and reputation associated therewith.

40.     Upon information and belief, Kate Spade adopted and will imminently be launching a line of clothing and accessories bearing the KATE SPADE SATURDAY mark that will be available through its www.saturday.com website and KATE SPADE SATURDAY retail stores with full knowledge, or reckless disregard, of Saturdays' prior use of the SATURDAYS Marks.

41.     Upon information and belief, Kate Spade has reproduced, copied or colorably imitated the SATURDAYS Marks with the use of the KATE SPADE SATURDAY mark on labels, hang tags, displays, packages, advertisements and promotional materials to be used in

connection with the sale and offering for sale of clothing and accessories through its www.saturday.com website and KATE SPADE SATURDAY retail stores, and such use is likely to cause confusion, reverse confusion, to cause mistake, or to deceive.

42.     Upon information and belief, Kate Spade willfully and deliberately undertook the aforesaid course of conduct with intentional disregard of the trademark rights of Saturdays in the SATURDAYS Marks.

43.     Saturdays has not authorized Kate Spade, by license or otherwise, to use the SATURDAYS Marks in any way.

44.     Upon information and belief, Kate Spade continues to use the KATE SPADE SATURDAY mark to the detriment of Saturdays.

## COUNT I

### INFRINGEMENT OF FEDERALLY REGISTER TRADEMARK
### (15 U.S.C. § 1114(1)(a))

45.     Saturdays repeats and realleges each and every allegation of Paragraphs 1–44 above as if fully set forth herein.

46.     The above-described acts of Kate Spade infringe the registered trademarks SATURDAYS SURF NYC and SATURDAYS SURF NYC and Logo Design, and are in violation of the federal trademark laws, including § 32 of the Trademark Act of 1946, as amended (15 U.S.C. § 1114(a)).

47.     Upon information and belief, Kate Spade's acts as alleged herein have been committed with full knowledge of Saturdays' longstanding and prior rights in the trademarks SATURDAYS SURF NYC and SATURDAYS SURF NYC and Logo Design.  Kate Spade's infringement is therefore willful.

48.     Saturdays has no adequate remedy at law inasmuch as money damages alone would not adequately compensate Saturdays for the harm to its proprietary rights, established goodwill and business reputation.  Kate Spade's acts have caused and, unless this Court acts to preliminarily and thereafter permanently enjoin Kate Spade, will continue to cause great and irreparable harm to Saturdays and its proprietary rights, goodwill and business reputation, and to customers of Saturdays.

## COUNT II

### TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION (15 U.S.C. § 1125(a))

49.     Saturdays repeats and realleges each and every allegation of Paragraphs 1–48 above as if fully set forth herein.

50.     The above-described acts of Kate Spade violate § 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. § 1125(a)) in that they constitute trademark infringement, a false designation of origin, sponsorship or approval and unfair competition.

51.     Saturdays has established common law rights in the SATURDAYS Marks as applied to goods and services on and in connection with which said Marks have been used.

52.     Upon information and belief, Kate Spade is advertising and promoting the marks KATE SPADE SATURDAY and SATURDAY, on or in connection with clothing and accessories, and in connection with online and retail services for selling such products and imminently plans to introduce to the marketplace goods and services bearing said marks, which is likely to cause confusion or reverse confusion, or to cause mistake, or to deceive as to an affiliation, connection or association of Kate Spade and Saturdays, or as to the origin, sponsorship or approval of the goods or commercial activities of Kate Spade by Saturdays or

vice versa, or misrepresents the nature, characteristics, qualities of Kate Spade's goods or commercial activities in commercial advertising or promotion.

53.     Saturdays believes that Kate Spade, by the acts complained of herein, has infringed Saturdays' rights in the SATURDAYS Marks, and has unfairly competed with Saturdays and falsely designated the origin of Kate Spade's goods and services, causing irreparable injury to Saturdays.

54.     Saturdays has no adequate remedy at law inasmuch as money damages alone would not adequately compensate Saturdays for the harm to its proprietary rights, established goodwill and business reputation.  Kate Spade's acts have caused and, unless this Court acts to preliminarily and thereafter permanently enjoin Kate Spade, will continue to cause great and irreparable harm to Saturdays and its proprietary rights, goodwill and business reputation, and to customers of Saturdays.

## COUNT III

### COMMON LAW UNFAIR COMPETITION AND MISAPPROPRIATION OF INTELLECTUAL PROPERTY RIGHTS

55.     Saturdays repeats and realleges each and every allegation of Paragraphs 1–54 above as if fully set forth herein.

56.     The above-described acts of Kate Spade constitute unfair competition arising under the common law of the State of New York.

57.     The acts of Kate Spade complained of herein constitute common law unfair competition and misappropriation of Saturdays' intellectual property rights, and have caused and will continue to cause damage and irreparable injury to Saturdays.

58.     Upon information and belief, the acts of Kate Spade complained of herein have been committed intentionally, willfully, deliberately, in reckless disregard of Saturdays' legal rights, and/or with the malicious intent of injuring Saturdays.

59.     Saturdays has no adequate remedy at law inasmuch as money damages alone would not adequately compensate Saturdays for the harm to its proprietary rights, established goodwill and business reputation.  Kate Spade's acts have caused and, unless this Court acts to preliminarily and thereafter permanently enjoin Kate Spade, will continue to cause great and irreparable harm to Saturdays and its proprietary rights, goodwill and business reputation, and to customers of Saturdays.

## COUNT IV

## COMMON LAW TRADEMARK INFRINGEMENT

60.     Saturdays repeats and realleges each and every allegation of Paragraphs 1–59 above as if fully set forth herein.

61.     The above-described acts of Kate Spade constitute trademark infringement arising under the common law of the State of York.

62.     The acts of Kate Spade complained of herein constitute infringement of the common law trademark rights in the SATURDAYS Marks, and have caused and will continue to cause damage and irreparable injury to Saturdays.

63.     Upon information and belief, the acts of Kate Spade complained of herein by infringing the SATURDAYS Marks have been committed intentionally, willfully, deliberately, in reckless disregard of Saturdays' legal rights, and/or with the malicious intent of injuring Saturdays.

64.     Saturdays has no adequate remedy at law inasmuch as money damages alone would not adequately compensate Saturdays for the harm to its proprietary rights, established goodwill and business reputation.  Kate Spade's acts have caused and, unless this Court acts to preliminarily and thereafter permanently enjoin Kate Spade, will continue to cause great and irreparable harm to Saturdays and its proprietary rights, goodwill and business reputation, and to customers of Saturdays.

## COUNT V

### DECEPTIVE TRADE PRACTICES UNDER NEW YORK LAW
### (N.Y. Gen. Bus. Law § 349)

65.     Saturdays repeats and realleges each and every allegation of Paragraphs 1–64 above as if fully set forth herein.

66.     The above-described acts of Kate Spade constitute deceptive trade and business practices under the law of the State of New York, N.Y. Gen. Bus. Law § 349.

67.     Kate Spade's use of the KATE SPADE SATURDAY and SATURDAY marks are materially misleading to consumers and the public based on the identical nature of the marks and logo to the SATURDAYS Marks such that consumers have and will continue to suffer injury based on Kate Spade's deceptive use of the KATE SPADE SATURDAY and SATURDAY marks and logo, including but not limited to confusion, mistake, and deception as to the origin of Kate Spade's clothing and accessories.

68.     Upon information and belief, the acts of Kate Spade complained of herein have been committed intentionally, willfully, deliberately, in reckless disregard of Saturdays' legal rights, and/or with the malicious intent of injuring Saturdays.

69.     Saturdays has no adequate remedy at law inasmuch as money damages alone would not adequately compensate Saturdays for the harm to its proprietary rights, established

goodwill and business reputation.  Kate Spade's acts have caused and, unless this Court acts to preliminarily and thereafter permanently enjoin Kate Spade, will continue to cause great and irreparable harm to Saturdays and its proprietary rights, goodwill and business reputation, and to customers of Saturdays.

## COUNT VI

### TRADEMARK DILUTION UNDER NEW YORK LAW
### (N.Y. Gen. Bus. Law § 360-l)

70.    Saturdays repeats and realleges each and every allegation of Paragraphs 1–69 above as if fully set forth herein.

71.    Kate Spade's unauthorized use of its KATE SPADE SATURDAY AND SATURDAY marks and logo (i) is diluting and is likely to continue to dilute Saturdays' distinctive SATURDAYS Marks by blurring and tarnishing the distinctiveness thereof, and (ii) is likely to injure and has injured Saturdays' business reputation, in that such reputation has been removed from its power and control, all in violation of Section 360-l of the General Business Law of the State of New York.

72.    Saturdays has no adequate remedy at law inasmuch as money damages alone would not adequately compensate Saturdays for the harm to its proprietary rights, established goodwill and business reputation.  Kate Spade's acts have caused and, unless this Court acts to preliminarily and thereafter permanently enjoin Kate Spade, will continue to cause great and irreparable harm to Saturdays and its proprietary rights, goodwill and business reputation, and to customers of Saturdays.

## JURY DEMAND

Saturdays demands trial by jury on all issues so triable herein.

26

## PRAYER FOR RELIEF

WHEREFORE, Saturdays prays that this Court:

A.      Issue a preliminary and thereafter permanent injunction, restraining Kate Spade, its agents, officers, directors, employees, attorneys, privies, successors and assigns, and all those acting for, on behalf of, in active concert or participation with, Kate Spade from:

(i)      using, on and in connection with design, manufacture, distribution, promotion, advertising, offering for sale and sale of clothing and accessories as well as in connection with online and retail clothing store services, the trademarks KATE SPADE SATURDAY and/or SATURDAY, the domain name www.saturday.com or any other mark likely to cause confusion with the SATURDAYS Marks or likely to cause reverse confusion with the SATURDAYS Marks;

(ii)      using any symbol or device that is likely to cause mistake, deception, confusion or reverse confusion with the SATURDAYS Marks, or doing any acts or things likely to induce the belief on the part of the relevant consuming public or Saturdays' customers or potential customers that the goods and services of Kate Spade are authorized by Saturdays or are in any way connected or associated with the goods and services of Saturdays, or vice versa;

(iii)      printing, publishing, promoting, broadcasting, disseminating or distributing any advertisements or promotional materials that display the trademarks KATE SPADE SATURDAY and/or SATURDAY or any colorable imitation of the SATURDAYS Marks in connection with clothing and accessories and online and retail clothing store services;

27

(iv)    injuring Saturdays' business reputation, unfairly competing with Saturdays, falsely designating or describing goods or services or falsely representing facts to the detriment of Saturdays;

(v)    diluting the distinctiveness of the SATURDAYS Marks by blurring and tarnishing the distinctiveness thereof; and

(vi)    misappropriating Saturdays' intellectual property and infringing the SATURDAYS Marks, including without limitation, by using the trademarks KATE SPADE SATURDAY and/or SATURDAY in connection with the manufacture, distribution, promotion, advertising, offering for sale and sale of clothing and accessories and online and retail clothing store services.

B.    Order all clothing and accessories, letterhead, invoices, advertising, promotional materials, displays and any other materials in tangible or electronic form that Kate Spade or any of its agents possess that bear the trademarks KATE SPADE SATURDAY and/or SATURDAY or any colorable imitation of the SATURDAYS Marks, and all plates, molds, matrices and other means for making the same in the possession or control of either Kate Spade or any of its agents, to be delivered up to the Court during the pendency of this action and thereafter to Saturdays for destruction;

C.    Enter a judgment in favor of Saturdays and against Kate Spade, and order Kate Spade to pay Saturdays:

(i)    all profits, gains and advantages derived by Kate Spade as a result of its acts complained of herein, together with interest; and in view of the willful and deliberate nature of Kate Spade's acts complained of herein, that such amount be trebled;

(ii)     the actual damages sustained by Saturdays as a result of Kate Spade's acts complained of herein, together with interest; and in view of the willful and deliberate nature of Kate Spade's acts complained of herein, that such amount be trebled;

(iii)    the reasonable attorneys' fees, costs and disbursements of Saturdays in this action pursuant to 15 U.S.C. § 1117; and

(iv)     exemplary or punitive damages in view of Kate Spade's willful, wanton and malicious infringement, unfair competition, injury to business reputation and other intentional acts complained of herein;

D.     Grant to Saturdays such other and further relief as is just and proper; and

E.     Order Kate Spade to make a full report to this Court of its compliance with paragraphs A and B above within thirty (30) days of judgment herein pursuant to 15 U.S.C. § 1116 (a).

Dated:  New York, New York
        February 7, 2013

Respectfully submitted,

FOLEY & LARDNER LLP


By: _/s/ Robert S. Weisbein_____
    Peter N. Wang
    (pwang@foley.com)
    Robert S. Weisbein
    (rweisbein@foley.com)
    FOLEY & LARDNER LLP
    90 Park Avenue
    New York, NY 10016-1314
    (212) 682-7474
    (212) 687-2329

    *Attorneys for Defendant/Counterclaim
     Plaintiff Saturdays Surf LLC*

## CERTIFICATION OF SERVICE

I, Robert S. Weisbein, an attorney with Foley & Lardner LLP, hereby certify that on this February 7, 2013, I caused the **ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** to be electronically filed with the United States District Court for the Southern District of New York and served by e-mail and first class U.S. mail upon:

David H. Bernstein
Jennifer Insley-Pruit
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6696
dhbernstein@debevoise.com
jinsleypruit@debevoise.com

*Attorneys for Plaintiff KATE SPADE LLC*

/s/ Robert S. Weisbein
Robert S. Weisbein
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
(212) 682-7474

*Attorneys for Defendant/Counterclaim Plaintiff Saturdays Surf LLC*

30

4825-3650-3058.1