UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
KATE SPADE LLC,

               Plaintiff,          <u>OPINION</u>

     -against-

                               12 Civ. 9260 (MGC)

SATURDAYS SURF LLC,

               Defendant.

---------------------------------X

APPEARANCES:

       DEBEVOISE & PLIMPTON LLP
       Attorneys for Plaintiff
       919 Third Avenue
       New York, New York 10022

       By: David H. Bernstein, Esq., Megan K. Bannigan, Esq.,
          Rayna S. Feldman, Esq.

       FOLEY & LARDNER LLP
       Attorneys for Defendant
       90 Park Avenue
       New York, New York 10016

       By: Robert S. Weisbein, Esq., Andrew Baum, Esq., Adam
          G. Pence, Esq., Rachel Kramer, Esq., Casey
          Pearlman, Esq.

**Cedarbaum, J.**

This action is a trademark dispute between Kate Spade LLC and Saturdays Surf LLC. Kate Spade sues Saturdays Surf for a declaratory judgment that the name of Kate Spade's new brand, "Kate Spade Saturday," does not infringe Saturdays Surf's mark, "Saturdays Surf NYC," or any other "Saturday"-related mark claimed by Saturdays Surf. Saturdays Surf counterclaims for trademark infringement.

<u>First</u>, Saturdays Surf claims violation of the Lanham Act, 15 U.S.C. § 1114(1)(a), for infringement of its federally registered trademark "Saturdays Surf NYC." <u>Second</u>, Saturdays Surf claims violation of the Lanham Act, 15 U.S.C. § 1125(a), for trademark infringement, false designation of origin, and unfair competition related to its marks, including the unregistered marks "Saturdays Surf" and "Saturdays." In counts three and four, Saturdays Surf asserts claims under New York State law for unfair competition and misappropriation of intellectual property rights, and for common law trademark infringement.

With the consent of the parties, I held a five-day bench trial that consolidated a hearing on defendant's application for a preliminary injunction with a trial on the merits, pursuant to Fed. R. Civ. P. 65(a)(2). Seven witnesses testified at trial: Morgan Collett, Kyle Andrew, Kevin Parks, Theresa Canning Zast,

Robert Klein, Craig Leavitt, and Gerald Ford.  The parties also
designated portions of Kate Schrader's deposition.  After
considering all of the evidence, including the credibility of
the witnesses, I make the following findings of fact and
conclusions of law pursuant to Fed. R. Civ. P. 52(a).

**DISCUSSION**

To prevail on its federal claims, Saturdays Surf must
establish (1) that its marks are entitled to protection under
the Lanham Act and (2) that Kate Spade's use of "Kate Spade
Saturday" is likely to cause consumer confusion.  Virgin Enters.
Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003).  To address the
issue of consumer confusion, courts routinely consider and
balance the factors discussed in Polaroid Corp. v. Polarad
Elecs. Corp., 287 F.2d 492 (2d Cir. 1961).

Both sides agree that Saturdays Surf – the declaratory
judgment defendant and trademark infringement counterclaimant –
bears the burden of proving infringement by a preponderance of
the credible evidence.  See KP Permanent Make-Up, Inc. v.
Lasting Impression I, Inc., 543 U.S. 111, 120, 125 S. Ct. 542,
160 L. Ed. 2d 440 (2004).

**A. PROTECTION OF THE MARKS**

Saturdays Surf claims that three marks are entitled to
protection.  Determining whether a mark is protectable relates
closely to the confusion analysis, because a trademark's

distinctiveness is both the key consideration in assessing its protectability and a factor in determining the likelihood of confusion.  Playtex Prods. Inc. v. Georgia-Pacific Corp., 390 F.3d 158, 161 (2d Cir. 2004).

### 1. "Saturdays Surf NYC"

There is no dispute that the mark "Saturdays Surf NYC" warrants protection.  It is federally registered in both name and logo form.  Saturdays Surf NYC is a suggestive mark in the context of apparel.  It requires some imagination to reach a conclusion about the product.  See Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 743-44 (2d Cir. 1998).  The evidence shows that it is this mark that serves as a source identifier in the marketplace, with the mark appearing on all of the company's products and its storefront signs.  The scope of the mark's protection, however, will be discussed below in the context of the strength of the mark, particularly the strength of the word "Saturdays."

### 2. "Saturdays"

Saturdays Surf NYC also claims a common law trademark in its unregistered use of the word "Saturdays" alone.

A trademark's strength and the degree of protection to which it is entitled are measured in part by the mark's inherent distinctiveness.  Id.  The use of the word "Saturday" or "Saturdays," whether alone or as part of a longer trademark, is

best described as suggestive.  It requires imagination and
perception to reach a conclusion about the nature of the
product.  See id. at 744.  Both parties agree that their use of
that word is suggestive.  Testimony shows that both parties'
choice of the word "Saturday" or "Saturdays" for their
casualwear was intended to evoke feelings about what many
consider the best day of the week.

    Any common name or word can become a trademark if it is
arbitrary or suggestive.  That "Saturday" is a day of the week
does not necessarily make it ineligible for trademark
protection.  However, a mark's protection and strength is also
measured by what courts have called "acquired distinctiveness,"
meaning the recognition the mark has earned in the marketplace
as a designator of a party's goods.  Playtex, 390 F.3d at 163.
A finding that a mark is suggestive does not mean that a mark is
strong.  Streetwise, 159 F.3d at 744.

    The evidence at trial showed that numerous other companies
have used, and in many cases have registered, trademarks that
include the words "Saturday" or "Saturdays" in connection with
apparel and accessories.  At least one company, Singapore-based
"Saturday," uses the word to describe its entire line of
clothing.  There was no evidence that this brand has registered
for a trademark in the United States, but it has products in at
least two United States stores.  Many of the "Saturday"

trademarks offered in evidence are, however, somewhat different from the way that both Saturdays Surf NYC and Kate Spade Saturday use the word.  For example, the company L.L. Bean calls a line of its shirts "Saturday T-Shirts."  Although this mark is federally registered, the mark is not used by L.L. Bean to identify an entire brand, as the parties do here.  Furthermore, there was limited evidence presented regarding the extent of marketplace use of many of the marks that do use the word "Saturday" as part of their brand name.  The evidence did show, however, that many of these related products are currently available for purchase.  Overall, the evidence shows that the word "Saturdays" is commonly used in the context of apparel, and it is not clear that the defendant can monopolize this word alone.  Standing alone, the word "Saturdays," while suggestive, is not as strong as a suggestive mark would normally be, given that its frequent use in the apparel context makes it less distinctive.

It is also not clear from the evidence that Saturdays Surf NYC actually uses the word "Saturdays" in a way that is protected by the Lanham Act.  Ordinarily, trademark use involves placing a mark on goods to indicate that the goods come from the owner of the mark.  See 1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 408 (2d Cir. 2005).  The testimony here showed that it is the longer mark, "Saturdays Surf NYC," which appears

on each and every product of the company.  The word "Saturdays"
alone has appeared, for example, in the form of smaller
decorative tags and as screenprint designs on t-shirts.  But it
is "Saturdays Surf NYC" that serves as the source indicator, not
"Saturdays" alone.  The only item that uses "Saturdays" alone is
a magazine that the company publishes, although "Saturdays Surf
NYC" does appear on the title page of the magazine.  However,
according to testimony from Morgan Collett, one of the company's
founders, the company does not advertise any of its products for
sale in the magazine.

In sum, I am not persuaded that the mark "Saturdays" alone
is protectable.  Even if it is, however, it is a somewhat weak
mark.

### 3. "Saturdays Surf"

Saturdays Surf also claims a trademark in the unregistered
mark "Saturdays Surf."  This claim is not supported by the
evidence.  Although the company itself is called "Saturdays Surf
LLC," and Mr. Collett testified that the brand has been referred
to by others as "Saturdays Surf," there was no evidence that
this phrase was ever actually used in connection with any
product.  Mr. Collett's testimony showed that the two names used
on his company's products are (1) "Saturdays Surf NYC," which
appears on every product, and (2) "Saturdays," which has
additionally appeared on products with increasing frequency.

There was no testimony that any products bore the label "Saturdays Surf," without "NYC," or that any signage in the stores referred to the name "Saturdays Surf," without "NYC."   I therefore find that Saturdays Surf NYC failed to prove that the mark "Saturdays Surf" was in use at any time or in any way that would warrant trademark protection.  See 15 U.S.C. § 1127 (defining trademark as a name used to identify and distinguish goods and to indicate the source of the goods (emphasis added)).

**B. LIKELIHOOD OF CONFUSION**

In considering the Polaroid factors, no one factor is determinative, and courts do not apply a rigid formula to tally the factors.  Revlon Consumer Prods. Corp. v. Jennifer Leather Broadway, Inc., 858 F. Supp. 1268, 1277 (S.D.N.Y. 1994).  The factors are: (1) the strength of the senior mark, (2) the similarity between the marks, (3) the proximity of the products, (4) the likelihood that the senior user will "bridge the gap" between the products, (5) customer sophistication, (6) the quality of defendant's product, (7) evidence of actual confusion, and (8) whether defendant acted in bad faith in adopting the mark.  Polaroid, 287 F.2d at 495.  Trademark infringement requires a probability of confusion.  A possibility is not sufficient.  Playtex, 390 F.3d at 161.

### 1. Strength of the Mark

As noted earlier, this factor – the strength of a mark – involves the same analysis of distinctiveness as the protectability of a mark.  Id.  Here, the common word between the two marks in dispute is "Saturday" in its singular and plural form.  As already explained, I find the use of the word "Saturday" to be suggestive, but the field of users is somewhat crowded in the apparel marketplace.  This is true of the word's use in both of the marks at issue.

The mark "Saturdays Surf NYC" is stronger than "Saturdays" alone, since the addition of the other words makes it more distinctive.  As already discussed, this is also how the company consistently labels its products, and it is therefore this full mark that strongly identifies the product.  I find that the mark "Saturdays Surf NYC" is moderately strong.  It is weakened by the fact that the word really at issue in this case – "Saturdays" – has somewhat extensive third-party use.

### 2.  Similarity Between the Marks

In assessing similarity, courts look to the overall impression of the mark and compare each trademark as a whole against the other as a whole.  Brennan's, Inc. v. Brennan's Rest., LLC, 360 F.3d 125, 133 (2d Cir. 2004).  As noted above, Saturdays Surf NYC sometimes uses just the word "Saturdays," but the full mark always appears somewhere on its products and I do

not find the word "Saturdays" alone to be a protected mark.
Kate Spade Saturday always uses these three words on its
products.

There are some similarities between the marks, the most
obvious of which is both parties' use of the word "Saturday" –
Kate Spade Saturday in the singular, and Saturdays Surf NYC in
the plural.  Both logos are written in sans serif font, with all
letters capitalized.  In both logos, the word "Saturday" or
"Saturdays" is always much larger than the other words in the
logo.  Both marks strongly emphasize the word "Saturday."

However, the marks are different in several respects.  In
one mark, "Saturdays" is the first word; in the other,
"Saturday" is the last word.  The words the two marks do not
share, "Kate Spade" and "Surf NYC," are dissimilar in both sound
and appearance.  Saturdays Surf NYC uses a broken diagonal line
in its logo, while Kate Spade Saturday has no graphic design
element.  Saturdays Surf NYC often – but not always – displays
its logo on a white background.  For example, the sign outside
one of its stores is a white flag bearing the logo.  Kate Spade
Saturday often – but not always – displays its logo on a yellow
background.  For example, the shopping bags it uses to deliver
items ordered from "pop-up" shops in New York are bright yellow
and bear the logo.

In sum, there are some strong similarities, and some strong differences.  Perhaps most persuasive, then, is the use of the Kate Spade house mark in the "Kate Spade Saturday" mark.  The use of this famous house mark significantly reduces the potential for confusion.  Playtex, 390 F.3d at 164-65 ("We have repeatedly found that the presence of a distinct brand name may weigh against a finding of confusing similarity.").

Saturdays Surf NYC argues, however, that the Kate Spade name's fame will actually lead consumers to believe that Saturdays Surf NYC has been licensed by Kate Spade to use its mark or that Saturdays Surf NYC is an infringer.  This is consistent with Saturdays Surf NYC's argument that this is a "reverse confusion" case.  See W.W.W. Pharm. Co., Inc. v. Gillette Co., 984 F.2d 567, 574 (2d Cir. 1993) (describing reverse confusion as when "a subsequent user's selection of a trademark is likely to cause consumers to believe, erroneously, that the goods marketed by the prior user are produced by the subsequent user" (quotations omitted)).  However, the problem with this argument is that the Kate Spade name is very much entrenched in the fashion marketplace as associated with women's apparel and goods, not men's.  It is unlikely that consumers would believe Kate Spade Saturday, which bears the mark of a fashion house famous for women's products, would license to or collaborate with a men's clothing company.

11

### 3. Proximity of the Products

The primary distinction between the parties' products is that Kate Spade Saturday products are designed for women, and Saturdays Surf NYC products are designed for men.  This results in significant competitive distance between the two lines and makes confusion much more unlikely.  See <u>McGregor-Doniger Inc.</u> <u>v. Drizzle Inc.</u>, 599 F.2d 1126, 1135 (2d Cir. 1979).  The evidence does show that a segment of Saturdays Surf NYC's customers are women.  For example, approximately 15 percent of the names on its mailing list are women.  J.Crew sold a Saturdays Surf NYC t-shirt in its women's department as advertised on a female model.  Saturdays Surf NYC also orders more clothing in smaller sizes for pieces it believes women may purchase.

However, there is no evidence that the products women purchase from Saturdays Surf NYC are designed for women.  Mr. Collett testified that no clothing is currently designed by Saturdays Surf NYC particularly for women.  Instead, the products that women purchase are designed for and sold to men. Essentially, the items are unisex products, like t-shirts.  This is much different from the line of clothing sold by Kate Spade Saturday, which is designed only for women and does not include unisex items.  Theresa Canning Zast, vice president divisional creative director for Kate Spade Saturday, testified that about

forty percent of Kate Spade Saturday sales thus far have been dresses.  Other items, like t-shirts, are specifically designed with elements, like cut-out or scoop backs, that make them unlikely to be unisex.

The aesthetic of the parties' brands is also different. Kate Spade Saturday features bright colors, patterns, and aspires to create a playful image.  Saturdays Surf NYC features a more neutral palate and minimalist design, with at least some surf-inspired items.  This is not to say that Kate Spade Saturday has no products that are of minimalist design or that Saturdays Surf NYC does not have any colorful products.  But the overall impression of the products sold by each is quite different.

Finally, the products are sold in different channels of trade.  Both parties have websites devoted solely to their products where their products can be purchased.  In addition to two of its own New York brick and mortar stores, Saturdays Surf NYC products are sold in approximately 25 to 30 retail stores in the United States, including Bloomingdale's and Barneys New York.  Significantly, Kate Spade Saturday plans to sell its products exclusively in stores that sell its products only.  Ms. Canning Zast testified that there are plans to open Kate Spade Saturday stores in Houston, Los Angeles, and New York, but at

13

the time of trial had only signed a lease for a store in
Houston.

### 4. Likelihood of Bridging the Gap

This factor addresses the likelihood that Saturdays Surf
NYC, the senior user, will enter the market of the junior user,
Kate Spade Saturday.  As discussed in connection with the
related factor of proximity, Kate Spade Saturday's products are
designed exclusively for women, and Saturdays Surf NYC's
products are designed for men.  As an apparel company, Saturdays
Surf NYC is, of course, more likely to enter the field of
women's apparel than a senior user in a completely different
genre of goods.  Indeed, Mr. Collett testified that his company
is "looking towards the future" to develop a women's line of
clothing.  However, he explained that the company is focusing on
developing the already established line for men before it will
be able to release a women's collection.  There was no evidence
of any planning or preparation to launch a women's line.  The
evidence that Saturdays Surf NYC will bridge the gap is quite
speculative.

### 5. Customer Sophistication

Although no customers testified at this bench trial, the
evidence does show that both parties tend to cater to
sophisticated customers.  Both parties believe they are creating
fashionable, high-quality products.  The average prices charged

14

by both parties reflect that belief.  See Savin Corp. v. Savin Group, 391 F.3d 439, 461 (2d Cir. 2004) (noting that where cost of product is high, purchasers are likely to be more discerning than they might otherwise be and therefore confusion is less likely).  Price points for clothing under the Saturdays Surf NYC label range, on average, from $40 to $100.  For Kate Spade Saturday, the average price point is $80.  Neither product is priced at an "impulse" purchase level for most consumers.

**6. Quality of the Junior User's Product**

This factor is concerned with whether the senior user's reputation could be jeopardized by the fact that the junior user's product is of inferior quality.  See W.W.W., 984 F.2d at 575.  Courts have also recognized that this factor is relevant to the confusion analysis because products of equal quality may actually create more confusion because of their similar quality. See Morningside Group Ltd. v. Morningside Capital Group, LLC, 182 F. 3d 133, 142 (2d Cir. 1999).  Where both products are of similar quality, this factor "cuts both ways."  Id.  Both parties testified that they sell products that are intended to be of high quality, and Saturdays Surf NYC does not dispute that Kate Spade Saturday products are of equal quality to its products.  Accordingly, this factor is neutral.

**7. Actual Confusion**

There was evidence at trial regarding samples of clothing
returned to both parties following photo shoots by magazines.
Mr. Collett testified that along with a pair of Saturdays Surf
NYC shorts, a pair of Kate Spade Saturday shorts were returned
in a bag from Nylon Magazine to Saturdays Surf NYC.  On cross-
examination, Kyle Andrew, the senior vice president of Kate
Spade Saturday, testified that following the same type of photo
shoot with Teen Vogue, the magazine returned a Saturdays Surf
NYC sweater to Kate Spade Saturday.  Mr. Collett testified that
his company had never received others' products returned in this
way before.  Ms. Andrew testified that Kate Spade Saturday has
received items returned from magazines that were from other
companies, including the brand Pink Tartan and products from the
retailer Zappos.com.  This evidence is inconclusive.  It may be
some evidence of consumer confusion, but it may also amount to
nothing more than carelessness.

Finally, both sides presented testimony on consumer surveys
that purport to measure consumer confusion.  While it has become
routine in Lanham Act cases to submit such surveys, in this case
I find both to be of limited value.

Saturdays Surf NYC's survey suffers from several
methodological flaws.  This is evidenced in part by the fact
that the control group had a rate of "confusion" of over 34

percent, which raises serious questions about the leading nature
of the survey design.  The survey showed only the two logos
rather than an array of multiple logos, and included a battery
of questions that repeatedly asked about different types of
association between the two brands.  The high rate of confusion
in the control group is present despite the fact that the mark
selected by Robert Klein for the control was "Kate Spade Day
Off," which has a somewhat different connotation from the word
"Saturday" and other choices that could have been used, such as
"Weekend."  The survey also excluded women, even though
Saturdays Surf NYC's own position is that a portion of its sales
is to women.

        The survey offered by Kate Spade Saturday, however, is not
entirely helpful either.  Rather than conducting a survey that
was similar to Mr. Klein's but remedied the aforementioned
flaws, Gerald Ford's survey simply showed the Kate Spade
Saturday logo and asked a variety of questions about whether the
user of that mark had an association with any brand.  This
survey, then, was essentially designed to measure "forward
confusion," even though Saturdays Surf NYC is a much smaller,
less well known company.

        **8. Bad Faith in Adopting the Mark**

        The evidence does not show bad faith in the adoption of the
Kate Spade Saturday mark.  The mark was developed internally in

the summer of 2009, before Kate Spade was aware of the Saturdays Surf NYC mark.  In both 2009 and 2010, counsel for Kate Spade reviewed trademark searches and advised that, in their opinion, the Kate Spade Saturday mark could be used because the field for "Saturday"-related products was crowded.  At the time of this advice, Saturdays Surf NYC had not applied for trademark registration.  The first time any of the executives at Kate Spade learned of the Saturdays Surf NYC mark was in March 2011 when several pieces of Saturdays Surf NYC apparel appeared for sale in a J.Crew catalog.  Kate Spade again consulted with outside counsel, who advised that the Saturdays Surf NYC mark did not present a conflict, particularly because of the crowded field.  Although I give no weight whatsoever to the opinion of Kate Spade's lawyers, Kate Spade's adoption of the name with no knowledge of Saturdays Surf NYC and its reliance on the advice of counsel are evidence of good faith.  W.W.W., 984 F.2d at 575 ("Good faith can be found if a defendant has selected a mark which reflects the product's characteristics, has requested a trademark search or has relied on the advice of counsel.").

Saturdays Surf NYC also argues that the selection of the Kate Spade Saturday logo shows bad faith because options that were more distinguishable from the Saturdays Surf NYC logo were available.  Kate Spade certainly could have selected a different logo, but the evidence actually shows that certain logos were

rejected precisely because they looked too similar.  There is no evidence that Kate Spade Saturday's logo selection was made in bad faith.

**9. Weighing the Factors**

After considering and weighing each of the <u>Polaroid</u> factors, I conclude that Saturdays Surf NYC has not shown a likelihood of confusion by a preponderance of the credible evidence.  I am particularly persuaded by the relative weakness of the word that the two marks share, the significant distance between the men's and women's products, and the consistent inclusion of the famous house mark, Kate Spade, in its Kate Spade Saturday mark.

**C. STATE LAW CLAIMS AND KATE SPADE'S DEFENSES**

The elements of the New York State infringement claim are essentially the same as those under the Lanham Act.  <u>Revlon</u>, 858 F. Supp. at 1278.  Similarly, the New York State claims of unfair competition and misappropriation require a showing of actual confusion or likelihood of confusion, and the additional element of bad faith.  <u>Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.</u>, 58 F.3d 27, 34-35 (2d Cir. 1995).  Because the elements of the state law claims mirror the elements of the federal claims, I find in favor of Kate Spade on those claims as well.

19

Finally, it is unnecessary to reach Kate Spade's defenses of laches and unclean hands.

## CONCLUSION

For the foregoing reasons, judgment in favor of Kate Spade LLC and against Saturdays Surf LLC is granted on the counterclaims.  The declaratory judgment sought by Kate Spade is unnecessary.  The Clerk is directed to enter judgment accordingly.


SO ORDERED.


Dated:    New York, New York
          June 17, 2013


                              S/_____
                                   MIRIAM GOLDMAN CEDARBAUM
                                 United States District Judge